WILLIAM GASKELL and Others, Respondents, v. WILLIAM H. BEARD, CHARLES N. KIMPLAND and DUNCAN A. GILLIES, Appellants, THE HILTON TIMBER AND LUMBER COMPANY and Others, Respondents.

*Corporation— covered by the words "person or persons" in the lien law, section 1824, chapter 410 of 1882 — error in the amount stated in the notice of lien to be due.*

A corporation may file a notice of lien, under section 1824 of chapter 410 of the Laws of 1882, although such statute provides that such lien may be filed by "any person or persons," as a corporation, is as completely within the intention of the section as a natural person would be, and is equally entitled to its protection.

When persons are mentioned in a statute corporations are included, if they fall within the general reason and design of the statute.

Although the statute (Laws of 1882, § 1825, chap. 410) provides that the notice shall state the amount claimed, from whom it is due, or to become due, "giving the amount of the demand after deducting all just credits and offsets," etc., yet where, without any fraudulent intent, and through mistakes on the part of the persons having in charge the details of the business, the amount claimed in the notice of lien is considerably greater than the amount shown by the evidence to be due, the lien will be enforced, notwithstanding such error in the amount claimed in the notice.

Appeal by the defendants William H. Beard and Charles N. Kimpland from the following parts and portions of a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 29th day of May, 1890, that is to say:

*First.* From so much and such parts of said judgment as determines that the defendant, the Hilton Timber and Lumber Company, has the first lien upon the amount of money declared by said judgment to be due and owing to the defendant Duncan A. Gillies by the defendant, the Mayor, Aldermen and Commonalty of the City of New York.

*Second.* From so much and such parts of the said judgment as determines that the plaintiff herein have the second lien upon the amount of money declared by said judgment to be due to the defendant Duncan A. Gillies by the defendant, the Mayor, Aldermen and Commonalty of the City of New York.

*Third.* From so much and such parts of the said judgment as determines that the lien of the defendants William H. Beard and Charles N. Kimpland upon the moneys declared by the said judgment to be due to Duncan A. Gillies by the Mayor, Aldermen and

Commonalty of the City of New York, is the third lien thereon, and subsequent to the alleged lien thereon of the Hilton Timber and Lumber Company and of the plaintiffs.

*Fourth.* From so much and such parts of said judgment as directs the comptroller of the city of New York to pay over to the defendant, the Hilton Timber and Lumber Company, out of the fund in his hands due from the Mayor, Aldermen and Commonalty of the City of New York to Duncan A. Gillies, the sum of four thousand four hundred and ninety-two dollars and twenty-one cents ($4,492.21).

*Fifth.* From so much and such parts of said judgment as directs the comptroller of the city of New York to pay to the plaintiffs herein the balance of the said fund due from the Mayor, Aldermen and Commonalty of the City of New York to Duncan A. Gillies, which balance is by said judgment fixed at the sum of two thousand eight hundred and thirty-two dollars and thirty cents ($2,832.30).

Also an appeal by the defendant Duncan A. Gillies from the following parts and portions of the said judgment, that is to say:

*First.* From so much and such parts of the said judgment as determines that the plaintiffs herein have the second lien upon the amount of money declared by said judgment to be due to the defendant Duncan A. Gillies by the defendant, the Mayor, Aldermen and Commonalty of the City of New York.

*Second.* From so much and such parts of said judgment as directs the chamberlain of the city of New York to pay to the plaintiffs herein any of the moneys to the credit of the said fund due from the Mayor, Aldermen and Commonalty of the City of New York to Duncan A. Gillies, which sum is by said judgment fixed at the sum of two thousand eight hundred and thirty-two dollars and thirty cents ($2,832.30).

The action was tried before a referee, who filed his report, by which, among other things, the validity of the several notices of lien filed, and the amount due to the several parties filing such notices of lien, were determined.

*Matthews & Smith,* for the appellants.

*Benjamin Estes,* for the plaintiffs, respondents.

*S. B. Brownell* and *S. R. Johnson,* for the Hilton Timber and Lumber Company, defendant, respondent.

DANIELS, J. :

An action was commenced by William Gaskell and others against Duncan A. Gillies and others to enforce a lien for materials supplied to the defendant Gillies in the removal of an old wharf, and the construction of a new one at the foot of Rivington street in the city of New York. Another action was commenced for a like object in favor of William H. Beard and another against Duncan A. Gillies and others. These actions, by consent and on motion, were consolidated, and were afterwards tried together before the referee. By his report he found that there was payable to Gillies under his contract for the work the sum of $7,324.51, which was in the hands of the comptroller, to be paid as the balance of the contract-price still owing by the city of New York. Against this balance the Hilton Timber and Lumber Company, which was a corporation formed under the laws of the State of Georgia, and a defendant in the action, filed with the head of the department or bureau having charge of the work, and with the comptroller of the city, notices in the form prescribed by section 1825 of chapter 410 of the Laws of 1882, claiming a lien upon this balance for timber furnished and delivered to the contractor in the performance of this work. The plaintiffs Gaskell and others filed a similar notice in their own behalf for materials in like manner furnished and used, and so did the plaintiffs Beard and Kimpland, to enforce a lien in their favor against this sum of money. The balance was insufficient to satisfy the demands existing in favor of these different claimants. The referee concluded that the Hilton Timber and Lumber Company, which was a defendant in both actions, was entitled to be first payed out of the balance, and the firm of Gaskell and others to be next paid, and the plaintiffs Beard and Kimpland to be entitled to payment after the other two demands had been discharged. This left the plaintiffs Beard and Kimpland without sufficient money applicable to the payment of their debt, and they accordingly appealed from the judgment entered upon the report of the referee. The contractor Gillies also appealed from so much of the judgment as sustained the claim of Gaskell and others as a second lien upon the balance remaining unpaid to him for the work done under his contract.

In support of the appeal of the plaintiffs Beard and Kimpland, the position has been taken that this company was not entitled

to enforce its lien against the balance due to the contractor, for the reason that it was not a person, and could not be included in so much of the statute as relates to and provides for this remedy. The objection is that the law has secured the remedy only to "any person or persons who shall hereafter, as laborer, mechanic, merchant or trader, in pursuance of or in conformity with the terms of any contract made between any person or persons and the city, perform any labor or furnish any material toward the performance or completion of any contract made with the city, on complying with the next section, shall have a lien for the value of such labor or materials, or either, upon the moneys in the control of the city, due or to grow due under said contract with said city, to the full value of such claim or demand, and these liens may be filed and become an absolute lien to the full and par value of all such work and materials, to the extent of the amount due, or to grow due on said contract, in favor of every person or persons, who shall be employed or furnish materials to the person or persons with whom the said contract with the city is made, or the sub-contractors," etc. (§ 1824.) And that a corporation is not a person. This section of the law has been very broadly expressed, and its general intention evidently was to create a lien in favor of all persons performing labor or furnishing material to a contractor with the city, to enable him to perform and fulfill his contract. And no reason has been evinced for making any distinction in the right to the lien between a natural and artificial person, as a corporation is recognized as being in judgment of law. The remedy was designed to be general, without discriminating in favor of or against the party by whom the materials should be supplied or the service should be rendered. What was the design of the legislature was to prescribe and create this security in favor of the party who should furnish the materials or perform the service mentioned in it. And a corporation is as completely within this intention of the section as a natural person would be, and is equally entitled to its protection. For, as a matter of justice, no distinction can possibly exist between the merits of a claim for materials furnished by a corporation and an individual, but each is entitled to be equally supported and each may be fairly assumed to be a person within the intention of the act. It will be seen that it has not provided, by the most critical implication, that the person or

persons to be protected shall be natural persons, but the provision is that any " person or persons " furnishing the material or performing the labor or service shall be entitled to the lien. And a corporation is a person within the meaning of this language. As to the effect of such legislation, it has been stated that " the construction is, that when ' persons' are mentioned in a statute corporations are included if they fall within the general reason and design of the statute." (Angell & Ames on Corporations [10th ed.], § 6.) And this seems to follow from the legal definition of a corporation, and that is, that it is an artificial person. (*Marshall* v. *Baltimore, etc., R. R. Co.,* 16 How. [U. S.], 314, 327.)

In the case of *United States* v. *Amedy* (11 Wheat., 392) the defendant was indicted for destroying a vessel with intent to prejudice the underwriters. And whether it could be sustained or not depended upon the construction to be given to the language of an act of congress declaring it to be an offense to do the act charged, with intent or design to prejudice any person or persons that had underwritten any policy or policies of insurance thereon. It was insisted, in support of a motion to arrest the judgment, as the insurance was made by a corporation, that no offense had been established within the act. But the court held the objection not to be well taken, and said that " the mischief intended to be reached by the statute is the same whether it respects private or corporate persons. That corporations are in law, for civil purposes, deemed persons is unquestionable." (Id., 412.) This principle of construction was again applied in *Society, etc.,* v. *Town of New Haven* (8 Wheat., 464). That case arose under the treaty with England, declaring that there should be no future confiscations made, nor any prosecutions commenced against any person or persons, for or by reason of the part which he or they may have taken in the present war, and that no person shall, on that account, suffer any future loss or damage either in his person, liberty or property. And this was considered to be so broad as to include the case of a corporation. In the case of *Beaston* v. *Farmers' Bank, etc.* (12 Peters, 102), a similar question arose under another statute of the United States securing it priority in the payment of its debts. And it was objected that a corporation was not within the construction which should be given to the

language of the act. But in the opinion of the majority of the court it was said that, " no authority has been adduced to show, that a corporation may not, in the construction of statutes, be regarded as a natural person ; while, on the contrary, authorities have been cited which show, that corporations are to be deemed and considered as *persons* when the circumstances in which they are placed are identical with those of natural persons expressly included in such statutes." (Id., 134.) And this principle is directly applicable to the disposition of this objection, for the position and relation of the company to the contractor, and the justice of its demand, were identical with those of natural persons endeavoring to enforce the same remedy. In *People* v. *Rector, etc.* (22 N. Y., 44), a corporation was held by the Court of Appeals of this State to be a person within the meaning of that term as it was contained in the statute of limitations. (Id., 57.) And the principle was also generally followed in *Risley* v. *Phenix Bank* (83 N. Y., 318). And it is well supported by the legal rule that it is the duty of courts so to construe statutes as to meet the mischief which the law was intended to remedy, and to advance the remedy when that may be done without violating fundamental principles.. (*Dibble* v. *Hathaway*, 11 Hun, 571.) The referee was accordingly entirely right in overruling this objection as he did at the trial.

A further objection was taken in behalf of the plaintiffs Beard and Kimpland to the allowance of the debt of the Hilton Timber and Lumber Company on the ground that it had exceeded in its notices the amount actually owing to it for the timber which it had delivered. The amount claimed in favor of the company was the sum of $4,716.69, while the debt, as it was maintained by the evidence, was for the sum of $4,221.82, which presented an overcharge in its notices amounting to $494.87. The law, by section 1825 of chapter 410 of the Laws of 1882, has required the notices which are allowed to be filed to be verified by oath or affirmation. And that the notice shall state the amount claimed, from whom it is due, or to become due, " giving the amount of the demand after deducting all just credits and offsets," etc. And because the correct amount of the demand was not stated in the notices, this firm having the third in the order of notices filed, resisted the right of the company to a recovery. It is no doubt true that the intention of the act is, that

a correct statement of the indebtedness or claim should be inserted in the notices. This is required not only for the protection of the contractor himself, but also for that of the subsequent creditors who have similar claims against him. The law intends that a truthful statement shall be made, and has required as much as that from the creditor making it. And if this overcharge remained without any explanation, it might be inferred that a fraudulent augmentation of the debt was intended by the creditor, which would prejudice the claims of others as justly entitled to satisfaction. And that, under the authorities, would be sufficient to defeat a recovery by the creditor chargeable with the fraud. (*Lynch* v. *Cronan*, 6 Gray, 531 ; *Hoffman* v. *Walton*, 36 Mo., 613 ; *Foster* v. *Schneider*, 50 Hun, 151 ; *Hubbell* v. *Schreyer*, 15 Abb. [N. S.], 300, 304 ; *Reeve* v. *Elmendorf*, 38 N. J. Law [9 Vroom], 125 ; *McPherson* v. *Walton*, 42 N. J. Eq., 282.) And the case of *McMillan* v. *Seneca Lake, etc., Company* (5 Hun, 12) proceeded upon no departure from this strict rule. For there the excess consisted of no more than the demand for interest, which the court held might be rejected as surplusage. The case of *Morgan* v. *Taylor* (5 N. Y. Supp., 920), seems to be a departure from the principle maintained by the other authorities. But it is not necessary to determine how far it could be followed in the disposition of these appeals. For evidence was given upon the trial directly tending to prove the fact to be that the overcharge made by the company in its notices was the result of mistakes on the part of the persons having charge of the details of its business. The evidence given to establish this fact was quite satisfactory. It explained the source and the manner through which the error had been produced. And it was proved that it arose out of no disposition to charge against the contractor's balance any more than was actually owing by him to the company. And the referee, for that reason, considered that the statute did not require so strict a construction as to produce a forfeiture of this demand, as has now been insisted upon in support of the appeals. And in following that construction the case has proceeded no farther than litigated controversies are permitted to be carried in the correction of mistakes, and avoiding their consequences. That such a mistake will not justify the exclusion of the demand containing it was held in *Harrington* v. *Dollman* (64 Ind., 255). And so it was in *Kiel* v. *Carll* (51 Conn.,

440). And in *Odd Fellows' Hall* v. *Masser* (24 Penn., 507), it was stated by the court that in these proceedings what was required was good faith. And that appears to have been observed by the persons in charge of the business of the company. A similar objection was considered in *Allen* v. *Frumet, etc., Company* (73 Mo., 688). There items aggregating $1,779 were erroneously included in the demand. This was proven to have arisen out of a mistake as to the location of a furnace, and not from any intention to defraud. And it was for that reason held not to "invalidate the whole lien, especially where no one has been injured by the mistake, and the items are easily separable from the balance of the account." (Id., 692, 693.) These authorities, as well as the reason and equity of the statute, sufficiently support the conclusion adopted under the evidence by the referee, to require so much of the judgment as is in favor of the Hilton Timber and Lumber Company to be sustained.

The resistance made by the plaintiffs Beard and Kimpland and the contractor Gillies, to the demand allowed in favor of Gaskell & Co., has been placed upon a very similar state of facts. They included in their notices articles which had been used to improve their own property, and forming no part of the materials appropriated to the construction of the pier. But it was proved upon the trial that this arose out of a mistake and from erroneous advice given to the creditors by their counsel. How he could have supposed that the materials supplied and used for an entirely different and distinct object could be included legally in the claim made against the contractor's balance is somewhat mysterious. But evidence was given from which the referee considered this fact to have been established. It was undoubtedly a liberal view adopted by him for the protection of the creditor against the obvious mistake of his counsel. And as the evidence did directly tend to exhibit this to be the fact, it should not now be held that the referee in his generosity had taken too charitable a view of what was shown to have occurred, for the creditors themselves do not appear to have been responsible for the error brought about in this manner in the statement of their claim. They, on the other hand, appear to have been disposed to demand no more than they were legally entitled to claim. There was no fraudulent enhancement of their demand, as was the case in several of the authorities which have been cited;

and the rule which those authorities sustain should not, therefore, be enforced against these plaintiffs. By the disposition which was made of their claim no more has been allowed or recovered than it was entirely just they should receive.

The referee has added to his report a very carefully considered opinion. And for the reasons which he has assigned, and which have also now been stated, this judgment should be affirmed.

VAN BRUNT, P. J., and BRADY, J., concurred.

Judgment affirmed.