HENRY C. PECK, RESPONDENT, v. DORAN & WRIGHT COMPANY (LIMITED), APPELLANT.

*Wager contract — evidence as to an oral agreement modifying the written contract — liability of a corporation for the* ultra vires *acts of its agent.*

In an action brought to recover, under the statute, for money alleged to have been loaned upon wager contracts made by the plaintiff with the defendant, it appeared that the defendant was a corporation organized to do a general brokerage and commission business in grain and other commodities; that plaintiff gave to the defendant orders to buy wheat, paying various sums as margins, the wheat being usually carried by the defendant until the plaintiff ordered it to be sold. All the contracts were evidenced by formal writings.

*Held,* that the burden was upon the plaintiff to prove that the contracts included an oral one that no grain should be delivered, but that only the differences in the market-prices should be paid or received.

That the jury were at liberty to find, notwithstanding the writings, that they were wager contracts.

It was objected that the defendant, being a corporation authorized to do a legitimate business, that its agent could not do an illegitimate business and bind it by his acts in the prosecution of it.

*Held,* that as the defendant had obtained the plaintiff's money by means of wager contracts, it could not, while retaining the money, disclaim the transaction through which it was obtained.

APPEAL by the defendant from a judgment of the Supreme Court, entered in the office of the clerk of Albany county on the 18th day

of October, 1889, in favor of the plaintiff, for $3,394.25; and from an order entered in said clerk's office on the 21st day of October, 1889, which denied the defendant's motion to set aside the verdict and for a new trial.

The case was tried at the Albany Circuit before the court and a jury, at which a verdict was rendered in favor of the plaintiff for the sum of $3,394.25.

The action was brought by the plaintiff to recover, under the statute, the money lost by him upon wager contracts with the defendant upon the market-price of wheat. The defendant was a corporation organized to do a general brokerage and commission business in grain and other commodities. It had an office in Albany in charge of one Fuller. Plaintiff, at such office, gave to the defendant a large number of orders to buy wheat, and paid various sums as margins. The transactions, in form, were contracts whereby the defendant bought for the plaintiff, as a broker, upon commission, the wheat ordered at the market-price on the day of the order; the plaintiff paid the defendant various sums as margins; the defendant ostensibly carried the wheat upon the margin until the plaintiff ordered it sold, when they accounted with each other upon the basis that the selling price was obtained.

*William H. Shepard*, for the appellant.

*Eugene Burlingame*, for the respondent.

LANDON, J.:

The dealings between the parties were, in form, genuine contracts, evidenced in writing made at the time, for the purchase and sale by the defendant, as a broker, upon margins and for a commission, of wheat at the market-prices ruling at the time. The losses sustained by the plaintiff were apparently caused because he bought wheat at a higher price than that at which he subsequently sold it.

The burden was upon the plaintiff to prove that the apparent contracts were not the real contracts, and that the real understanding between the parties was, when the contracts were made, that the wheat should not be delivered, and that only the difference in the market-price should be paid or received. In other words, that the parties did not deal in wheat, but agreed to gain from or lose

to each other as the price varied between the day the purchase was ordered and the day the sale was ordered. (*Kingbsury* v. *Kirwan*, 77 N. Y., 612; *Story* v. *Salomon*, 71 id., 420; *Bigelow* v. *Benedict*, 70 id., 204.)

The jury have found, upon the evidence, that the plaintiff made good the burden resting upon him. We think the verdict supported by the evidence. True, the written contracts were against him, but the statute against wager contracts would be of small value if the truth could not be shown by extrinsic evidence, and it was competent to give such evidence. (Same cases.)

The plaintiff testified that at the commencement of his dealings with Fuller, who represented the defendant, and through whom the same were made, he asked him how the defendants executed their orders, and Fuller replied: That "they assumed their orders and booked them themselves; that they had no wheat to deliver; and didn't expect their customers to want any wheat; that it was merely to adjust the difference as between the market-price and the prices marked on the slip" (contract).

Fuller testified that nothing of the kind was said, and thus it was for the jury to settle the fact. The plaintiff also testified that he did not intend to buy any wheat, but only to deal with respect to its fluctuations in price.

The absence of any testimony that wheat was purchased upon any of the orders and the accounts given of the various transactions tended to indicate that they dealt with reference to the price of wheat, and not in wheat.

The defendant objects that it is a corporation, authorized to do a legitimate business, and that as it could not lawfully authorize Fuller to do an illegitimate business it cannot be bound by his acts in the prosecution of it; that the attempt to confer such authority would be *ultra vires*, and the attempted ratification of the agent's acts equally so. The position is untenable. A person equally with a corporation has no lawful power to do wrong, but both have the capacity to act, and the capacity to act amiss inheres in the capacity to act at all. Given the power and capacity to do right the actor may, nevertheless, do wrong. Unless the actor is wholly irresponsible he must answer for his wrong action, partly in justice to those injured thereby and partly as a deterrent to its like repetition by

himself and others. If the agents of a railroad corporation take my timber or iron against my consent and convert it into a bridge to the use of the corporation, the corporation must either restore my property or pay me for it. Here the defendant corporation has obtained the plaintiff's money. It was obtained by means of wager contracts. Confessing that it has the money, the defendant practically argues that because it could not thus obtain it within its lawful powers, it does not really have it. Pretending to disclaim the transactions by which it obtained the money, it practically argues that its pretended disclaimer gives it title to keep the money. But, in truth, it cannot perfect its disclaimer of the transaction without surrendering its fruits; it cannot retain the money without adopting its agent's methods of obtaining it; it cannot insist upon a defense so long as it refuses to qualify itself to interpose it. The doctrine of *ultra vires* is in no wise applicable to the case.

We have examined the various other exceptions to the admission of evidence and to the rulings of the court and find none which require a reversal.

The judgment should be affirmed, with costs.

LEARNED, P. J., concurred; MAYHAM, J., not acting.

Judgment and order affirmed, with costs.